IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:13-CV-229-RJ

| | |
|---|---|
| ANGELA H. SUTTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-27, DE-33] pursuant to Fed. R. Civ. P. 12(c). Plaintiff Angela H. Sutton ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB") under Title II and Title XVI of the Social Security Act. [DE-6].[1] Plaintiff has filed a motion for judgment on the pleadings requesting the court reverse Defendant's administrative decision or in the alternative remand the matter for a new hearing. [DE-27]. Defendant has filed a motion for judgment on the pleadings [DE-33] to which Plaintiff has responded [DE-39] and Defendant has replied. [DE-40]. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is ordered that Plaintiff's Motion for Judgment on the Pleadings be allowed, Defendant's Motion for Judgment on the Pleadings be denied.

## I. STATEMENT OF THE CASE

On or about September 12, 2011, Plaintiff applied for a period of disability, DIB and

---

[1] It is unclear from the Complaint whether Plaintiff is seeking review of the denial of her claim for supplemental security income.

supplemental security income ("SSI") alleging disability beginning October 3, 2010. (R. 179, 187). Plaintiff's applications were denied initially, on April 27, 2012, and upon reconsideration, on October 10, 2012. (R. 105, 113, 117, 121). A hearing before the Administrative Law Judge ("ALJ") was held on March 15, 2013, at which Plaintiff was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 32, 147, 177). On June 20, 2013, the ALJ issued a decision denying Plaintiff's applications. (R. 8). On August 28, 2013, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. 1). On October 24, 2013, Plaintiff timely filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded*

2

*by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision

3

pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Plaintiff alleges the ALJ erred by: (1) improperly evaluating medical opinion evidence under 20 C.F.R. § 404.1527 and (2) improperly evaluating Plaintiff's impairments under Listing 11.04 for cerebrovascular accident ("CVA"). Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings [DE-28] ("Pl.'s Mem.") at 9-12.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 3, 2010. (R. 13). Next, the ALJ determined Plaintiff had the following severe impairments: late effects of CVA, non-obstructive coronary artery disease, hypertension, diabetes mellitus and obesity. (R. 14). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(a), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (R. 14). Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC, finding Plaintiff had the ability to perform light work[2] with the following limitations: Plaintiff is limited to only occasional balancing and never

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

climbing ladders, ropes or scaffolds, and must also avoid all exposure to workplace hazards, such as dangerous machinery and unprotected heights. (R. 14-15). In making this assessment, the ALJ also found Plaintiff's statements about her limitations not fully credible. (R. 15-23). At step four, the ALJ concluded Plaintiff is unable to perform any past relevant work because the demands of her past work exceed her current RFC. (R. 23). The ALJ found that considering Plaintiff's age, education, work experience and RFC, there are a significant number of jobs in the national economy Plaintiff can perform. (R. 24-25). Accordingly, the ALJ concluded Plaintiff has not been under a disability, as defined by the Act from her alleged onset date of October 3, 2010, to the date of the ALJ decision, June 3, 2013. (R. 25).

## B. Plaintiff's Testimony at the Administrative Hearing

At the time of her administrative hearing, Plaintiff was 49 years old and living with her daughter and three grandchildren. (R. 36, 38). Plaintiff completed the 12th grade of high school. (R. 39). Plaintiff has not worked nor has she performed any volunteer work since October 3, 2010. (R. 37). When asked by the ALJ if she had received unemployment benefits since October 2010, Plaintiff responded in the negative. *Id.* The ALJ however pointed out the New Hire Report, indicating she had received unemployment benefits in 2011 and the first quarter of 2012. *Id.* The ALJ then stated that she did not believe Plaintiff was being cooperative and her attorney agreed. *Id.* Plaintiff has a driver's license but has not driven a car since 2010. (R. 38). As a means of support, Plaintiff relied on her daughter when she was working and her brother to provide her with money. *Id.* Before she stopped working, Plaintiff was employed as a healthcare technician for children, in which capacity she helped make beds, bathe the patients, and prepare meals. (R. 39). Plaintiff stopped working in 2010 because she had a stroke and was experiencing "fall out spells" making it

5

difficult to stand for long periods of time without passing out. (R. 40). She learned she had a stroke in 2010 when she visited her doctor. *Id.* She experienced falls in 2010 and described her condition as sometimes "feeling funny." *Id.* If she has trouble standing up she sometimes uses a walker. *Id.* She was given a walker in 2012 which she can use to walk "a little ways" before needing to sit. (R. 40-41). She described "a little ways" as from the parking lot into a store, Walmart for example, when she would then need to sit down and rest. (R. 41). She cannot walk around the entire Walmart store. *Id.* She has used a motorized buggy at the store on occasion when they are available. *Id.* However, even when using it, if she starts to "feel funny" she must stop and wait a few minutes. *Id.* She can stand in one place for about ten minutes. (R. 41-42). Before she had a walker she would hold on to a chair to help her walk. (R. 42). She sometimes sleeps during the day and experiences pain in her back and left leg. *Id.* She was prescribed the walker to maintain her balance. *Id.*

## C.   Vocational Expert's Testimony at the Administrative Hearing

Ashley Joseph Johnson testified as a VE at the administrative hearing without objection. (R. 43-48). She testified she was familiar with Plaintiff's work activity as a nursing assistant, which she described as semi-skilled medium work with a SVP of 4. (R. 43). The ALJ asked the VE the following hypothetical:

> [a]ssuming an individual of the claimant's age, education, and work history who can lift 50 pounds occasionally and 25 pounds frequently; stand and walk for six hours in an eight hour workday with normal breaks; can occasionally balance; has no other limitations. Could such an individual perform the claimant's past work?

(R. 43-44).

The VE answered in the affirmative. (R. 44). With an added requirements that the hypothetical individual avoid all exposure to working around unprotected heights and moving

6

machinery, the VE's response remained the same. *Id.*

The ALJ next described the following hypothetical individual: limited to lifting and carrying 20 pounds occasionally, 10 pounds frequently; occasionally balancing; avoiding ladders, rope and scaffolding for climbing and avoiding moving machinery and unprotected heights. *Id.* The VE responded that an individual with such limitations could perform the jobs of Housekeeper (DOT # 323.687-014; unskilled light work; SVP of 2), Cashier II (DOT # 211.462-010; light work with SVP of 2), and Small Parts Assembler (DOT # 706.684-022; light work with SVP of 2). (R. 44-45).

The ALJ modified the hypothetical to lifting and carrying 10 pounds occasionally and 5 pounds frequently. (R. 45). The VE identified the jobs of Order Clerk (DOT # 209.567-014; sedentary, SVP of 2), Charge Account Clerk (DOT # 205.367-014; sedentary, SVP of 2), and Final Assembler (DOT # 713.687-018, sedentary with SVP of 2). *Id.*

The VE testified further that if the individual could understand, remember and carry out short, simple instructions for two hours at a time in an eight hour workday they would be able to perform the light and sedentary positions identified, which are unskilled with SVP of 2. (R. 46).

The ALJ inquired of the VE further:

[C]an you identify jobs for lifting and carrying 50 pounds occasionally; 25 pounds frequently with all of the limitations that I've incorporated in sedentary, the occasional balancing; the avoidance of ladders, the avoidance of moving machinery and unprotected heights; but again, we said they could do the past work as a nurse assistant, but if I added understanding, remembering and carrying out short, simple instructions, which is essentially by your testimony limits her to SVP: 2 jobs, would that eliminate her past work?

(R. 46).

The VE answered in the affirmative. *Id.* The ALJ next inquired whether there were jobs available with these limitations at the medium exertional level of work. *Id.* The VE identified three

7

medium-level jobs with a SVP of 2: Laundry Worker (DOT # 361.685-018), Automobile Detailer (DOT # 915.687-034), and Dining Room Attendant (DOT # 311.677-018). (R. 46-47).

The VE indicated that if the hypothetical individual needs a walker to ambulate to and from the workstation, such requirement would eliminate the light and medium jobs, but the sedentary jobs would involve minimal standing and walking. (R. 45). The VE testified further, however, that using bilateral hands to push a walker would eliminate the ability to carry objects, so that would eliminate all jobs she described; there would be no jobs such an individual could perform. (R. 45-46). Alternatively, instead of a walker, if the hypothetical individual at any of the exertional levels identified were unable to stand for less than six hours a day and sit for less than six hours a day, there would be no work available that she could perform. (R. 47). For all the jobs she identified, the VE provided approximate numbers of all such jobs in the state and national economies. (R. 44-47).

The VE said her testimony was consistent with the DOT. (R. 47). However, whereas the DOT does not address the use of a walker or short, simple instructions, the VE relied upon her experience and training in support of her testimony. *Id.*

## V. DISCUSSION

Plaintiff contends the ALJ erred by failing to weigh the opinion of Dr. Staneata, a consultative examination physician. Pl.'s Mem. at 9-10; Pl.'s Resp. [DE-39] at 1-2. The Commissioner contends that the ALJ properly analyzed the physician's opinion. Def.'s Mem. [DE-34] at 5-10; Def.'s Reply [DE-40] at 1. The court concludes that the ALJ erred in evaluating the physician's opinion and remand is required.

Dr. Irvin examined Plaintiff on October 25, 2012, relative to Plaintiff's discharge from the hospital following a syncopal episode. (R. 686). Dr. Irvin concluded Plaintiff "needs to be

8

discharged with a walker" and that she is "100% disabled because of her multiple cerebrovascular accidents and her multiple medical problems." (R. 687). Dr. Gridley diagnosed Plaintiff with vascular dementia on August 30, 2011, and concluded she was "disabled to work." (R. 444). The ALJ rejected these medical opinions, ultimately concluding they were inconsistent with the "clinical findings" during Plaintiff's hospitalizations, and attributing the conclusions of Drs. Irvin and Gridley to reliance on Plaintiff's subjective complaints and sympathy. (R. 23).

On February 12, 2011, however, Dr. Judit Staneata performed a consultative examination of Plaintiff. (R. 689-92). In her functional assessment of Plaintiff, Dr. Staneata concluded in relevant part as follows:

> The number of hours the claimant can stand is about 30 minutes. The number of hours she can walk is about 30 minutes before she needs to sit down. The number of hours she can sit is about 1-1/2 hours. The amount of weight she can carry is 5 pounds occasionally and frequently and the amount of weight she can lift is 5 pounds occasionally and frequently. . . . Assistive device to ambulate, she has a one-point cane, which she uses at times. . . . Based on today's exam on the physical findings, the claimant's maximum functional capacity for standing and walking is less than sedentary, for sitting less than sedentary. Assistive device is helpful for long distances and uneven terrain and lifting and/or carrying occasionally is less than sedentary.

(R. 691-92).

In her administrative determination, the ALJ noted Dr. Staneata's findings and conclusions. (R. 19). However, in her consideration of weight afforded to the medical opinions in this case, the ALJ explicitly limits her discussion to the medical opinions of Dr. Irvin and Dr. Gridley. (R. 22) ("As for the opinion evidence, the undersigned notes that both *Dr. Gridley*. . . and *Dr. Irvin*. . . offered opinions that the claimant is disabled") (emphasis added).

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(c), 416.927(c). In general, the ALJ should give more weight to the opinion of an

9

examining medical source than to the opinion of a non-examining source. *Id.* §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. *Id.* §§ 404.1527(c)(2), 416.927(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590 (quotations & citations omitted). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (unpublished), he must nevertheless explain the weight afforded such opinions. *See* S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject

10

medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8.

"In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (unpublished), *aff'd sub nom. Moore v. Colvin*, 584 F. App'x 155 (4th Cir. 2014). To be sure, courts have found harmless error where the ALJ failed to discuss a non-treating physician's opinion that would not have altered the ALJ's conclusion. *Id.* (concluding the ALJ's failure to consider a physician's opinion was harmless error where the opinion was consistent with the ALJ's RFC determination); *see Sutton v. Colvin*, No. 4:14-CV-CV-15-D, 2015 WL 736094, at *9-10 (E.D.N.C. Feb. 20, 2015) (unpublished) (holding ALJ's failure to weigh state agency examining consultant's opinion of claimant's functional limitation was harmless error where consideration would not result in an award of benefits); *Pittman v. Colvin*, No. 5:13-CV-465-D, 2014 WL 4463236, at *7 (E.D.N.C. Aug. 26, 2014) (unpublished) (holding failure to consider treating physician opinion was harmless error where limitations outlined in the opinion did not conflict with RFC determined by ALJ), *adopted by*, 2014 WL 4457257 (E.D.N.C. Sept. 10, 2014).

Here, the opinion of Dr. Staneata contradicts the ALJ's RFC determination and potentially corroborates the examining physicians' opinions of Drs. Irvin and Gridley which the ALJ rejected. *See Dew ex rel. K.W. v. Colvin*, No. 4:12-CV-129-D, 2013 WL 4523617, at *6 (E.D.N.C. Aug. 27, 2013) (unpublished) (adopting magistrate judge's recommendation to remand case where the ALJ failed to consider treating medical opinion that contradicted ALJ's determination). Furthermore, there appears to be no treating physician's opinion in this case, which heightens the relevance of the consultative examinations. Finally, while the ALJ noted the findings of Dr. Staneata (R. 19), the

11

court cannot discern from the ALJ's discussion the weight given to the opinion and the reasons therefor. *See Bryant v. Colvin*, No. 5:11-CV-648-D, 2013 WL 3455736, at *5 (E.D.N.C. July 9, 2013) (unpublished) ("[i]n some cases, the failure of an ALJ to explicitly state the weight given to a medical opinion constitutes harmless error, so long as the weight given to the opinion is discernible from the decision and any grounds for discounting it are reasonably articulated.") (citations & quotations omitted); *Abernathy v. Astrue*, No. 4:08-CV-99-FL, 2009 WL 1578533, at *3 (E.D.N.C. June 3, 2009) (unpublished) ("[T]he ALJ may have had a proper reason . . . [;] [h]owever, the court will not undertake to hazard a guess as to what such valid reasons might be."). Therefore, the court cannot find that the failure to weigh Dr. Staneata's opinion was harmless error.

Accordingly, the ALJ's error in failing to weigh the medical opinion of Dr. Staneata was not harmless error and requires remand. *See Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013) ("Just as it is not our province to 'reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ],' it is also not our province—nor the province of the district court—to engage in these exercises in the first instance.") (internal citation omitted). On remand, it is within the ALJ's discretion to accept or reject the opinion in whole or in part, so long as he clearly articulates valid reasons for so doing.

Because the court has concluded the case should be remanded on the issue of the medical opinion, the court declines to consider the other issue of error raised by Plaintiff.

## VI. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Judgment on the Pleadings [DE-27] is ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-33] is DENIED, and the action is REMANDED to the Commissioner. In remanding, this court expresses no opinion on the ultimate

outcome.

Submitted, this the 31st day of March 2015.

Robert B. Jones, Jr.
United States Magistrate Judge